IN THE DISTRICT COURT FOR SOUTH CAROLINA

MICHAEL A. NOLAN, 30270-074

V

Case No.

MATHEW HAMIDULLAH, Warden;
M. RIVERA, warden;
KATHERYN MACK, S.O.E.;
ESTILL FEDERAL CORRECTIONAL INSTITUTION;
U.S. ATTORNEY GENERAL;
DIRECTOR, BUREAU OF PRISONS;
REGIONAL DIRECTOR, RAY HOLT;
HARRELL WATTS, NATIONAL INMATE APPEALS
         Defendants                              )

M E M O R A N D U M

Comes now the Petitioner Michael Nolan, Pro Se, and pursuant to the following

Authorities: Bivens V Six Unknown Narcotics Agents, ___ US ____ ; 5 USC 701, etc; [1]

28 USC 1331, 1346, 1361, and 2201; 29 USC 701, 790, 791, 794, 794a, & 794d; and [2]

42 USC 2000d, submits the accompanying complaint, and this memorandum in support

thereof.  And states:

CONSTITUTIONAL, STATUTORY, AND OTHER PROVISIONS INVOLVED

UNITED STATES CONSTITUTION, Amendment V:

"No person shall be deprived of life, liberty, or property without due process
of law."

U.S. CONSTITUTION, Amendment VIII:

"Excessive bail shall not be required, nor excessive fines imposed, **NOR CRUEL
AND UNUSUAL PUNISHMENT INFLICTED.**"

18 USC 4042

(a) In general--The Bureau of Prisons, under the direction of the Attorney Gen-
eral, shall--
(1) have charge of the management and regulation of all Federal Penal and Corr-
ectional Institutions;
(2) Provide suitable quarters and provide for the safekeeping, care, and subsis-
tance of all persons convicted of offenses against the U.S.

-----------

   [1] 20 USC 1684, Title IX of the Education Amements of 1972, (See Jeldness V
        Pearce, 30- F.3d 1220, 1224-25 (9th Cir. 1994) with supporting cites and
        senate reports
   [2] INcluding Executive Order # 12250, Incorporated into complaint, Exhibit B

29 USC 701, 790, 791, 794, 794a, & 794d

(see texts in their entirety)

42 USC 12101
Americans with disabilities act
Purpose and Findings

(see text in it's entirety)

5 CFR 2635.101
Standards of Ethical Conduct for Federal Employees

(see text in it's entirety)

## BACKGROUND

The Petitioner is Certified by the medical professionals in charge of his Health Care, to be legally blind. This condition will degenerate in time, and will become progressively worse. (See Attachment A, containing a packet of records).

The Petitioner is housed in a Federal Corrections Facility that does not specialize in housing blind individuals. No special considerations have been prepared to accomodate the conditions that a blind person needs to live independly without difficulty, and to complete daily activities in the same manner as other individuals.

The Petitioner is required to participate in a G.E.D. program, and is hindered from receiving compensation for labor equal to other inmates because he does not posess his G.E.D. Initially, the staff at Coleman USP1 provided a waiver from participation in G.E.D. classes due to his disability, and staff allowed petitioner to receive fair compensation for his labor. Within 2 months after arrival at Estill F.C.I. the waiver was discontinued and the petitioner required to attend class's without any ability to participate in the classes due to his blindness. The petitioner is unable to obtain fair compensation for his labors that was being provided after the previous facility recognized that they were unprepared to provide for the petitioner, and the petitioner will not reach this goal due to the Bureau's neglegence to satisfy Federal law.

2

III.  29 USC 791 and 28 CFR parts 36, 37, and 39 Specifically Apply to the Bureau of Prisons.

29 USC 791 and 28 CFR parts 36, 37 and 39 enforce the Americans with Disabilities Act, and apply standards that the Bureau of Prisons and the Attorney General must comply with in the area of Education, Employment, and Public Places.  These laws and Regulations are intertwined with both Americans with Disabilities Acts, and the Bureau's duties.  Public places would include, Canteens, Religious Services, and Unicore, (Prison Industries), which have duel application to the definitions of "Commerce and Commercial buildings".

IV.  Congress Declared Their Purpose and Intent for the Americans with Disabilities Act, Creating Substantive Due Proocess Obligatins of the Federal Government.

The declaration of Conngress in the Americans with Disabilities Act is plainly written and unambigious, as declared in 42 USC 12101(b), titled "purpose":

"It is the purpose of this act--
(1) To provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
(4) to invoke the sweep of congressional authority, including the powers to . . . and to regulate commerce, in order to address the major areas of discrimination faced day to day by people with disabilities."

It could not be more clear that Congress meant to ensure that the federal government is to play a central role in enforcing the standards established in the Americans with disabilities Act, which was written in mandate form to eliminate discrimination.  The bureau of Prisons and Attorney General has an obligation to adhere to this mandate, and the authority envoked by Congress that enforces the Acts Standards.

4

V. The Crueal and Unusual Punishment Clause Requires a Minimum Standard
of Living conditions, and Humane Conditions, Which INclude Medical
Conditions Set Up For the Handicapped.

The Supreme court has ruled that "deliberate indifference to serious medical
needs of Prisonrs" is cruel and unusual punishment." Estelle V Gamble, 429 US 104,
50 L.Ed2d 251.  This complaint alleges facts that state a constitutional claim
under this standard.

A. The Plaintiff Has a Serious Medical Need:

First, Courts generally agree that a medical need is "serious" if it has been
diagnosed by a physician as mandating treatment. (See Johnson V Busbee, 953 F.2d
349, 351 (8th Cir. 1991); Mannouth County Correctional Institution INmates V L
Lanzaro, 834 F.2d 326, 346 (3rd Cir. 1987); Cert. Denied, 486 US 1066; Ramos V
Lamm, 639 F2d 559, 575 (qpth Cir. 1980), Cert Denied, 450 US 1041; and cases cited
therein).

In this instant ccase the prison Health Services providers diagnosed the
Plaintiff's condition, rating him as legally blind, and stated that he needed
treatment to minimize the degression, possibly delaying the unavoidable status of
total blindness for as long as possible.  the Petitioners condition is "serious"
and legally handicapped under the terms of the Americans with disabilities Act
and Social Security Regulations, requiring special conditions.

Second, a medical conditionn may be serious if it "significantly" affects an
individual's daily activities." McCuckin V Smith, 974 F.2d 1050, 1060, (9th Cir.
1992).  Plaintiff's conditionnhas serious consequences for him.  Plaintiff's cond-
ition is so serious that he cannot read, operate equipment, or observe instruction
and warning signs in the present condition.  He canot see labels on food and medic-
ine containers.  His condition will get progressively worse and can hinder him from
seeingihis surroundings, the activities he is doing, gauge distances, hazards, or
content.  Daily activities are seriously affected. (See Mcguckin, Id; Boretti V

Wiscomb, 930 F2d 1150, 1154-55 (6th Cir. 1991); Dean V Gaughlin, 623 F.Supp. 392,

404 (S.D.N.Y. 1985), "Conditions that cause pain, discomfort, or threat to good

health are serious". This is true because a chief purpose of cruel and unusual

punishment is to prevent the "unnecessary and wanton infliction of [harm]". Estille,

Id at 429 US 104. (Citations omitted). conditions are a significant matter under

the cruel and unusual punishment clause. (See Estelle, Id at 429 US 102, "our more

recent cases have held that the Amendment . . . embodies "broad and idealistic con-

cepts of DIGNITY, CIVILIZED STANDARDS, HUMANITY, AND DECENCY . . . against which

we must evaluate penal measures". This standard requires that conditions be provided

for blind persons, that is compatible with the Americans with Disabilities Act, and

congress's intent, and provides dignity, civilized standards, humane, and decent

living standards for the handicapped.

> VI.    The Attorney General Fails to Create and Impliment Any Regulations Which
> Provide Adequate Conditions, Services, and Equipment Which Satisfy the
> Purpose of the Americans With Disabilities Act and Provides Suitable
> Quarters, Care, and Subsistance of Inmates.

18 USC 4042 directs that the Attorney General shall have charge of the regul-

ations governing all Federal Institutions. The Attorney General made the choice

to create parts 36, 36, and 39 of title 28 CFR, but has not written any substantive

guides which instruct or require subordinates concerning the provisions of proper

conditions, services, and equipment which satisfies the Americans With Disabilities

Act, and all Statutes that correspond with it's purpose. congress ezxpressed their

desire to envoke the powers of their authority to create a clear and comprehensive

mandate, yet, the Regulations of the Department of Justice are lacking and the

Institutions of the Bureau of Prisons do not provide any conditions, services, or

equipment that eliminates discrimination of the blind. The Attorney General must

create those Regulations, and guarentee that all B.O.P. facilities meet the mandate

of Congress.

6

VII.    The Director of the Bureau of Prisons is Responsible for Managing the
        Bureau, and Correct Problems Raised in an Administrative Remedy.  The
        Director Failed his Duty and Neglects to Maintain Adequate Conditions
        in the Bureau.

18 USC 4041 assigns the Director of Bureau of Prisons, who is to serve

directly under the Attorney General.  The responsibilities include the management

of the facilities, and answer the complaints in Administrative remedies forms.

These responsibilities would include compliance with the Standards of Ethical

conduct for Federal Employees.

When the petitioner submitted his complaint within the Administrative remedies

the director neglected to respond, and simply has not taken into consideration the

problems of blind individuals in the custody of the Bureau.  The Director should

monitor all facilities and guarentee that all problems of the blind is corrected,

and fully in compliance with the Americans with Disabilities Act.  Furthure, the

illegal hinderances of the petitioner from earning an income should be corrected

until such time as there is appropriate means for the petitioner to earn an income.

VIII.    The Defendant Watts is Responsible For Processing Complaints For the
         Director and Attorney General, and Failed to Recognize or Take Such
         Steps that Correct Any Discrimination of Handicapped, When It Was
         Brought to His Attention.

The Defendant Watts is assigned the responsibility of reviewing Administrat-

ive remedies forms that are submitted to the Directors Office, and responding to

the complaints that are brought up in relation to the VIII Amendment and laws

governing Disabled Inmates.  The laws which govern Discrimination of Disabled

persons is clear, and supported by the Americans with Disabilities Act, which is

in correlation with the Eigth Amendments Cruel and Unusual Punishment clause.  The

Petitioner brought up the fact that he was legally blind, and that there had been

a waiver in effect from compulsory attendance in G.E.D. classes, and from a

restriction of earning a higher amount of compensation for his labors due to

the neglect of the Bureau of providing adequate conditions for Blind persons to progress in the G.E.D. class's. It is plainly inhumane, undignified, uncivilized, and indecent for the Bureau to procrastinate in providing meaningfull progress, requiring a person to sit in a classroom that cannot accomplish anything for a blind person, and then penalize the inmate by refusing to allow him to receive fair compensation that others receive. The defendant Watts refused to re instate the waiver that had existed for a year and effectively delayed the petitioners ability to complete his G.E.D., instead of satisfying the needs of the handicapped and aiding their indenpendant progress in a G.E.D. class. The defendant Watts did not consider the needs of the disabled who are blind, and advise the Director and Attorney General in the situation, and the needs in every facility to address the problem. This failure of Defendants Watts, Defendants filling the position of the Director, and the Attorney General, to satisfy the law, is a sign of incompentency that affects the disabled in an unconstitutional manner.

IX.   The Defendant Ray Holt, as Regional Director, is Responsible for Superv-
      ising All Bureau of Prisons in the S.E. Region, and is Required to
      Investigate and Correct Non Compliance Concerning the Discrimination of
      the Disabled.

According to the Administrative Remedies Procedures established by the Department of Justice, for the Bureau of Prisons, a complaint is sent to the Regional Director to address complaints, after it has been reviewed by the Warden of each Facility. The Director has the job of overseeing all prisons in his region, and when an inmate brings to his/her attention, is responsible for guarenteeing that the law is complied with for handicapped individuals.

The pettioner filed a complaint and pointed out that prisons do not have adequate accomodations for inmates who are legally blind, which discriminates against the disabled, causing complications of their lifestyle and educational

needs.  Ray Holt did not monitor issues that were raised in the Administrative remedy that was sent to his office, and did not make any effort to remedy the statutory discrepencies, or the discrimination that was complained of.

All prisons are subject to the numerous statutory and Regulatory Guidelines listed in this cause, which Congress created after recognizing more then once, that there is an epidemic hindering disabled persons from living their lives independently and equally.  Employment, Housing, Commerce, Electronics, Information media and Education are covered in the numerous Statutes and Regulations.  The Regional Director was responsible for monitoring, recognizing, and correcting these problems. (See matters of concern mentioned herein).

The Director, Ray Holt, is also required to comply with the Eigth Amendments cruel and unusual punishment clause4, and monitor this facility for problems that become cruel and unusual punishment conditions for handicaped.  It has been a long standing and well settled precident of the supreme court, that the VIII Amendment has emphasis on serious medical conditions, Dignity, civilized Standards, Humanity, and Decency. (See Quote of Estille, supra).  By failing to provide proper conditions for the handicapped, and then allow prison staff to penalize an inmate on the basis of his inability to advance in a mandatory educational program, discriminating against him by refusing to allow him to earn equal income, is an insult to his dignity, is not civilizes standards that meet the multi statutory protections for handicapped, is inhumane, and is a total lack of decency.

The Regional Director was shown that a variance from burdening the petitioner with participation in the unproductive G.E.D. classes was previously given, and was the remedy for providing productive accomodations that would of helped the petitioners progress.  The petitioner held that waiver for 14 months at Coleman U.S.P. 1, excusing him and allowing him to earn a higher level of compensation for

labor. Medical staff certified that he was unable to participate in the classes because of his legally blind status, and the facility lacked any conditions that helped him progress independantly. Yet, Upon arrival at Estill F.C.I., the staff had removed the waiver and required the petitioner to sit in a class that is void of any meaningfull opportunity to learn, as certified by medical personel, and dis-criminates against the petitioner. When staff reduced the petitioners pay scale that he was eligable to earn for 14 months, they violated the Eigth Amendment. The Regional Director did nothing to rectify the problem, and holds the petitioner in limbo, without any hope of progressing. Until he has completed the correction of the lack of facilities for disabled persons, the petitioner is subjected to cruel and unusual punishment, and every other person in this situation is also denied the protection of the laws that are supposed to protect disabled persons.

Because the petitioner has been unable to progress towards a G.E.D. and is unable to earn any Vocational, college, or Apprenticeship degrees due to this delay that has been ongoing for 22 months, the petitioner is unable to qualify for better jobs that the law require for those who are disabled and QUALIFY, and will be at a disadvantage upon release. This creates a heavy financial burden on the petit-ioner.

X.    The Wardens of F.C.I. Estill Have Neglected to Provide Any Appropriate Conditions, Services, and Equipment Which Satisfies the Various Laws Implimented to Protect Americans With Disabilities; Has Discriminated Against the Petitioner and Caused Cruel and Unusual Punishment by ken Removing the Waiver That the Petitioner Held for 16 Months; and Failed to Respond to the Petitioners Complaint.

The Wardens of Each Facility have a responsibility to fullfill the duties of the Bureau of Prisons. (See Standards of Ethical conduct). These responsibilities include the application of 29 USC Chapter 16, including § 792, 793, 794, 794d, and 36 C.F.R., part 1151. The Wardens also have an obligation to the VIII Amend-ment, to prevent inhumane, undignified, uncivilized, and indecent conditions from occuring. These laws correspond with 28 C.F.R. 36.

The Wardens must address a complaint which demonstrates a violation of the various laws protecting disabled citizens, when it is filed through the Administrative Remedies.

Discrimination, as described above, is ultimately the responsibility of the Warden to monitor, correct, and maintain proper procedures to prevent. The petitioner is legally blind, his condition will become progressively worse, and he is unable to see educational materials, test sheets, chalkboards, keyboards, telephone dials, canteen receipts and order forms, informational sources, eletronic displays, Devices, letters, books, magazines, newspapers, displays, packaging of food items and cosmetics, etc. Religious practice is hindered because of his lack of indepenantly reading material.

The petitioner was housed at USP1 Coleman for 14 months, receiving a variance from attending G.E.D. classes and earning the highest pay grade, because the facility did not have any ability to help him advance in the G.E.D. classes due to his blindness. Upon arrival at F.C.I. Estill, the defendant Mack removed the waiver, caused the petitioner to be limited to the lowest pay grade, and refuses to provide any adequate conditions to help the petitioner be independant immediately within the classes. The petitioner does not make progress, and has not since arrival at this facility. The petitioner filed a complaint to the Wardens office, who was Warden Hamidullah at that time. Warden Hamidullah refused to re instate the waiver or address the conditions of this facility under the various statutes applying to the discrimination of handicapped.

Reducing the petitioners pay scale and forcing him to sit in a class room that does not allow him any progress, and hindering his ability to be independant and obtain an education, is a violation of the VIII Amendment. (See above).

Warden Rivera has replaced Warden Hamidullah, but fails to respond to the issues that need addressing. The discrimination, violations of various statutes,

and allowing a handicapped to have an independant life, continues to be cruel
and unusual punishment.  Failing to address the problems with her subordinate, Ms
Mack, is a failure to perform her job.

The loss of future income because the Petitioner cannot prepare for a qualified
job at the vast amount of jobs that must satisfy the disability statutes is a liab-
ility of the Wardens, until such time as the laws are satisfied and conditions imp
improve.

XI.   The Defendant Mack, in her Capacity as Superintendant of Education at
      Estill F.C.I. Fails to Provide Appropriate Materials and Equipment to
      Enable the Petitioner and other Disabled persons, to Independantly
      Progress in the Education Class's, and Unconstitutionally Refused to
      continue the Variance of the Petitioner.

Upon arrival at Estill F.C.I. the Defendant Mack refused to honor the petitioners
variance from participation in the inadequate G.E.D. classes, and hindered the pet-
itioners ability to be equal to the other inmates who are not disabled due to blind-
ness.  The bureau of Prisons had failed to upgrade their educational system to
provide an inmate who is legally blind with an opportunity to progress in the G.E.D.
classes for 22 months.  If the Bureau of Prisons had upgraded their education system,
the petitioner would of made progress and obtained his G.E.D.  Yet, after procrasti-
nating for 22 months and refusing to satisfy the law and constitution, they gave
a variance and paid the petitioner the top pay grade for 22 months.  Then the
defendant Mack does not respect this delay that the Bureau decided to instigate,
and inhumanely causes the petitioner to be reduced to the lowest pay grade, sit in
a worthless class, and be unable to make progress.

Failing to provide conditions and services that help the petitioner to be
independant, and penalizing the petitioner due to the bureau's negligence is cruel
and unusual punishment in violation of the 8th Amendment.  The defendant Mack knew

that the petitioner has had a variance for 16 months due to the bureau's failure
to maintain adequate educational facilities for legally blind individuals, yet Mack
decided to ignore the variance that had been maintained, require the petitioner to
sit in a classroom that has no current conditions for legally blind individuals, and
cause the petitioner to loose his equal status of earning higher pay due to his
disabilities.  The Defendant Mack has failed to improve the inadequate conditions,
and has made no effort to provide a means for independant study and progress in the
G.E.D. program.  Nothing has been disclosed to the petitioner to indicate that any
improvements are being implemented, and the petitioner is sitting in a classroom
that does not provide any progress.

XII.   The Bureau of Prisons Must Improve Conditions of the Prisons to Meet
       the Standards Required by Law to Enable the Disabled to Live Independantly.

The laws that cover disabled Citizens have been in existance for years.  The
defendants have had ample opportunity to upgrade their prisons to meet the needs of
blind individuals.  The defendants were one and all challenged through the Administ-
rative Remedies to address the problems of disabled persons who are legally blind,
and have difficulty reading small print.  Yet, after 4 years, the Bureau has not made
any progress in correcting the prisons, and after 4 months the defendant Mack, and
Wardens Hanidullah and Rivera have not made one single improvement in the education
departments method of teaching G.E.D. classes, or give any hope as to when it will
be started.  Yet, the Regulations and statutes have been in place all along that
govern the needs of disabled persons, without the bureau doing what is needed to
correct the educational problems for disabled persons.  Information mediums, are printed
printed very small.  Electronic devices, such as controls on Microwaves, copiers,
washers, computer keyboards, and computer screens are too small and cannot be oper-
ated independantly.  The telephone does not have large keys to operate independantly.
The telephone does not have large keys to operate independantly and maintain privacy.

Receipts and order sheets from the canteen, displays, law books, educational books, Regulations, and other such documents, are information mediums that must be printed in large text to enable independant reading by legally blind persons who can see with large printed material. Buildings do not have signs warning of steps, the locks that are sold are not large print, and should be substituted with a key lock for blind persons who cannot see the combination, so that property can be secured in lockers. Keyboards are printed too small and an amature typest cannot use the typewritters that are mandatory by the Bureau, and/or computer keyboards that may be available, or being able to take a typing or computer class. The discrepencies are extreme, and hinder the petitioner from independant lifestyle. The petitioner cannot read his mail, any books, newspapers, magizines, and has a right to privacy, has a right to use the reading material provided in the Bureau Prison libraries.

CONCLUSION

The Defendants are required by law to correct the above problems, and should do so forthwith, to accomodate the disabled, who are blind. Their hinderance has created cruel and unusual punishments by inhumanely removing the variance that was the earlier remedy, and treating the petitioner unfairly by refusing to allow him to earn a fair compensation for labor. The defendants have known that the Petitioner and other prisoners are legally blind, yet have not attempted to provide a safe, indep-endant lifestyle and ability to earn a G.E.D., and they defendants require the petit-ioner to sit in a class without any effort to improve the learning ability.

Until this issue of cruel and unusual punishment is corrected, and the petitioner knows that it no longer causes a financial burden, the petitioner cannot file his TORT claim for damages. This court should review the administrative action, and order the Administration to comply with all statutory and Regulatory protections written for disabled persons. This court should prevent any furthure cruel and unusual punishments from recurring.

Wherefore the Petitioner prays this honorable court shall:

1.   Grant  the relief prayed  for in  the petitioners complaint.

                                        RESPECTFULLY SUBMITTED,

                                        Michael  Nolan, pro se
                                        Reg. No. 30230-074
                                        F.C.I.
                                        P.O. BOX 699
                                        Estill SC   29918